UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.

MATTHEW NIX and EARL McCOY,

Defendants.

**DECISION AND ORDER**

6:14-CR-06181 EAW

Presently before the Court is a motion, filed by Defendant Matthew Nix ("Nix") on June 5, 2017, seeking the following relief: (1) that one of the jurors who served during the trial—identified as "J.B." or "Juror No. 3"[1]—not receive immunity and be charged criminally; (2) appointment of a special prosecutor in the investigation of Juror No. 3, and recusal of the prosecution from that investigation; and (3) recusal of the prosecution from Nix's criminal case. (Dkt. 325). Nix also raises issues related to "discovery" and "conflict at hearing." (*Id.* at ¶¶ 67-69).

In addition, in an affirmation filed on June 9, 2017, Nix includes a request that, in the event the present motion is denied, the evidentiary hearing concerning Juror No. 3's alleged bias be stayed pending review by the Court of Appeals pursuant to 18 U.S.C. § 3771(d)(3). (Dkt. 340 at ¶ 13).

For the reasons set forth below, the Court denies Nix's motion in its entirety, and also denies his request for a stay.

---

[1]     This juror was mistakenly identified in previous filings, including this Court's Order filed on May 3, 2017 (Dkt. 302), as Juror No. 4. In fact, the juror in question was Juror No. 3.

## BACKGROUND

Defendants Matthew Nix and Earl McCoy ("Defendants") were convicted on March 17, 2017, after a five-week jury trial of all counts in a 12-count Third Superseding Indictment alleging violations of the Hobbs Act, 18 U.S.C. § 1951(a), and related firearms and narcotics charges, in connection with a spree of home invasions in 2014. (Dkt. 165). After the return of the verdict, and prior to sentencing, Defendants filed post-trial motions pursuant to Fed. R. Crim. P. 29(c) and 33. (Dkt. 286; Dkt. 289). In those post-trial motions, Defendants argue, *inter alia*, that Juror No. 3 was ineligible to serve on the jury pursuant to 28 U.S.C. § 1865(b)(5) due to undisclosed felony convictions, and his failure to disclose this information during *voir dire* requires a new trial because of juror bias.

The Court held oral argument on the post-verdict motions on May 15, 2017, at which time the Court indicated that it would hold an evidentiary hearing on the issue of Juror No. 3's alleged bias. (Dkt. 310). At a subsequent appearance on May 25, 2017, Juror No. 3 appeared and was appointed counsel, and the Court set an evidentiary hearing date of June 12, 2017. (Dkt. 329). At that May 25, 2017, appearance, the Court advised Juror No. 3 that failure to disclose prior felony convictions while under oath during *voir dire* or in response to a juror questionnaire made under oath could give rise to criminal prosecution, including perjury under 18 U.S.C. § 1621. (*Id.* at 6). The Government

stated that it would discuss with counsel for Juror No. 3 whether it would grant immunity to Juror No. 3 before the evidentiary hearing. (*Id.* at 12).[2]

On June 5, 2017, Nix filed the instant motion. (Dkt. 325). Nix argues that he was "directly and proximately harmed as a result of [Juror No. 3]'s commission of a federal offense," (Dkt. 325 at ¶ 7), and therefore is a "crime victim" within the meaning of the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771 (Dkt. 325 at ¶ 6). Invoking that statute, he requests that this Court force Juror No. 3 to be charged criminally and not be granted immunity. (*Id.* at ¶ 18). Nix also argues that "[t]he Government is seeking to both prosecute Mr. Nix and immunize the felon juror that perjured himself in order to uphold the unlawful conviction," (*id.* at ¶ 37), and that the Government's position has given rise to "an actual conflict," (*id.*), that requires the appointment of a special prosecutor to determine whether Juror No. 3 should be charged criminally (*id.* at ¶ 36). Furthermore, Nix argues that the Government should be recused from the prosecution of Nix's criminal case based on a variety of purportedly inappropriate conduct by the Government that, according to Nix, evidences the Government's intent not to "seek[] justice, but only . . . the Defendants' conviction." (*Id.* at ¶ 66). Finally, Nix raises issues related to discovery and an alleged conflict. (*Id.* at ¶¶ 67-69).

The Government filed a response in opposition to Nix's motion on June 8, 2017, arguing that: (1) Nix has not established that Juror No. 3 committed a federal offense, and Nix is not a victim under the CVRA; (2) there is no authority for the appointment of a

---

[2] On June 9, 2017, an immunity letter was provided by the U.S. Attorney's Office to counsel for Juror No. 3.

special prosecutor or the disqualification of the U.S. Attorney's Office; (3) Nix's motion merely restates "meritless arguments he raised previously;" (4) the request for discovery has already been satisfied; and (5) there is no basis for substitution of counsel of Nix. (Dkt. 339).

On June 9, 2017, counsel for Nix filed a further affirmation in support of his motion. (Dkt. 340). In that affirmation, Nix requests that, in the event his motion is denied, the Court stay any evidentiary hearing pending review by the Court of Appeals pursuant to 18 U.S.C § 3771(d)(3). (*Id.* at ¶ 13).

For the following reasons, the Court denies Nix's motion in its entirety, as well as his request for a stay.

## DISCUSSION

### I.    CVRA Argument

"The CVRA affords certain rights to victims of a crime." *United States v. Whipple*, 155 F. Supp. 3d 321, 324 (W.D.N.Y. 2015). As relevant to the instant motion, the CVRA provides the following rights to a crime victim:

> (2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
>
> . . .
>
> (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.
>
> (5) The reasonable right to confer with the attorney for the Government in the case.
>
> (6) The right to full and timely restitution as provided in law.

. . .

(8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

(9) The right to be informed in a timely manner of any plea bargain or deferred prosecution agreement.

18 U.S.C. § 3771(a); (*see* Dkt. 325 at ¶ 3 (citing subsections of § 3771(a) listed above)). The Court has an affirmative obligation to ensure that these rights are provided. 18 U.S.C. § 3771(b)(1) ("In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded [these rights].").

## A. Nix is not a "Crime Victim" Under the CVRA

The Court must determine whether Nix is a "crime victim" under the CVRA. For the reasons set forth below, the Court finds that he is not.[3]

---

[3]    The Court has doubts as to whether the CVRA even applies in the circumstances of this case. "Courts are required to ensure that crime victims are afforded their rights in 'any court proceeding involving an offense against a crime victim.'" *United States v. Turner*, 367 F. Supp. 2d 319, 323 (E.D.N.Y. 2005) (quoting 18 U.S.C. § 3771(b)). The *Turner* court, interpreting § 3771(b), observed that "[t]he phrase 'an offense *against* a crime victim' could be likewise be read to effect what [the court] believe[s] would be an unintended narrowing of the statute's reach. . . ." *Id.* However, in that case, the court was confident that the defendant committed mail fraud "against" two individuals who were properly "crime victims." *Id.*

The answer appears different in this case. Assuming the truth of the allegation that Juror No. 3 committed perjury, the Court does not believe that it can fairly be said that Juror No. 3 committed perjury "against" Nix. Rather, it is the Court or the body before which one is sworn to testify truthfully that is the victim of any alleged perjury— not a litigant who allegedly suffers some harm as a result of the influence of the perjured testimony. "The victims [of charged perjuries] . . . were . . . the federal court system itself. The federal perjury statute, 18 U.S.C. § 1621, governs the relationship between citizens and the federal judicial process; its purpose is to punish an offender for the 'wrong done to the courts and the administration of justice.'" *United States v. Markiewicz*, 978 F.2d 786, 802 (2d Cir. 1992) (quoting *United States v. Manfredonia*,

- 5 -

A victim is defined by the CVRA as "a person directly and proximately harmed as a result of the commission of a Federal offense. . . ." 18 U.S.C. § 3771(e)(2)(A). "It bears mention that victims' rights under the CVRA begin well before a conviction; thus, the status of 'victim' may be based on allegations rather than proof." *United States v. Saltsman*, No. 07-CR-641(NGG), 2007 WL 4232985, at *1 (E.D.N.Y. Nov. 27, 2007) (citing *United States v. Turner*, 367 F. Supp. 2d 319, 326 (E.D.N.Y. 2005) (noting that "[t]hat syllogism-which renders the CVRA inapplicable to this or any other criminal case unless and until the defendant is proved guilty beyond a reasonable doubt-produces an absurd result that [the court] must presume Congress did not intend"), and *I.N.S. v. St. Cyr*, 533 U.S. 289, 299-300 (2001) (holding that "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' . . . we are obligated to construe the statute to avoid such problems" (citation omitted))). A victim must show direct and proximate harm, which "encompasses the traditional 'but for' and proximate cause analyses." *In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir. 2009) (finding no clear error in conclusion that defendant's participation in drug conspiracy was not a direct and proximate cause of mother's son's murder by paramilitaries affiliated with a terrorist organization). "The necessary inquiry is a fact-specific one." *Id.* Generally, the district court is in the best position to determine whether relief may be afforded pursuant to the CVRA, and to

414 F.2d 760, 764 (2d Cir. 1969)). Thus, the Court has significant doubts as to whether the CVRA applies and whether the Court has any obligations under § 3771(b) in this case. *See also United States v. Parse*, 789 F.3d 83, 111 (2d Cir. 2015) (discussing potential penalties for juror who lies during *voir dire* as including "possible substantial restitution claims by the *government* under 18 U.S.C. § 3663" (emphasis added)).

develop reasonable procedures for affecting the rights afforded to victims under the CVRA. *See United States v. Rigas*, 409 F.3d 555, 562 (2d Cir. 2005).

Nix purports that he is a "crime victim" because he was "directly and proximately harmed" as a result of Juror No. 3's alleged failure to disclose prior felonies because Nix "was deprived of a Fair Trial, an Impartial Jury, the ability to use peremptory challenges to obtain a fair trial and impartial jury and he was convicted and continues to litigate the case while incarcerated." (Dkt. 325 at ¶ 14). Nix contends that he has suffered additional harms as a result of Juror No. 3's alleged perjury, such as "continued incarceration, the emotional distress of receiving a guilty verdict when it was illegally obtained (and despite no evidence being presented against Mr. Nix for Counts 3 and 4 of his indictment under 14-cr-06181)." (*Id.* at ¶ 15).

Nix's arguments are unpersuasive. Based on the record before it, the Court finds that Nix is not a crime victim under the CVRA because the alleged harm—chiefly, conviction following the jury trial—was not a direct and proximate result—*i.e.*, the but for cause—of any perjury by Juror No. 3. Nix does not—and cannot—argue that, if Juror No. 3 had disclosed his alleged felony convictions and a different juror served in his place, then Nix would not have been convicted at trial.[4] The link between Juror No. 3's alleged failure to disclose and Nix's conviction is too attenuated. Since the jury was unanimous, and the other 11 jurors agreed with Juror No. 3's conclusion, Nix cannot

---

[4] The Court views this question—whether Nix suffered direct and proximate harm as a result of Juror No. 3's alleged perjury for purposes of the CVRA—as different and distinct from whether Nix's Sixth Amendment rights were violated as a result of any alleged bias by Juror No. 3. That latter issue is not yet resolved, and will be determined, in part, on the testimony elicited during the hearing scheduled for June 12, 2017.

establish that a non-felon juror would have reached a different result. Likewise, the record does not support the contention that collateral harms of "emotional distress" and "continued incarceration" result from Juror No. 3's alleged non-disclosure. As the Government points out, Nix is incarcerated not just in connection with this case, but also for a pending drug prosecution and a violation of supervised release. As a result, Juror No. 3's alleged perjury is not a direct and proximate cause of the harms alleged by Nix, and as a result, Nix is not a "crime victim" for purposes of the CVRA.

**B. The Requested Relief is not Cognizable Under the CVRA**

Even if Nix were a "crime victim" for purposes of the CVRA, the relief he requests—prosecution of and denial of immunity for Juror No. 3—is not cognizable under the CVRA.

The rights afforded to crime victims under the CVRA are not without limits, as that statute expressly prohibits any intrusion on prosecutorial discretion. *See* 18 U.S.C. § 3771(d). In a subsection entitled "No cause of action," the CVRA provides that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." *Id.* § 3771(d)(6). As described by the district court in *United States v. Rubin*, 558 F. Supp. 2d 411 (E.D.N.Y. 2008), "the CVRA, for the most part, gives victims a voice, not a veto." *Id.* at 418. The *Rubin* court explained:

> Although the CVRA is meant to be liberally construed within the confines of the rights guaranteed, there is absolutely no suggestion in the statutory language that victims have a right independent of the government to prosecute a crime, set strategy, or object to or appeal pretrial or in limine

orders entered by the Court whether they be upon consent of or over the objection of the government.

*Id.* at 417-18.

Courts have interpreted § 3771(d)(6) as precluding crime victims' demands that the United States Attorneys undertake certain prosecutions. *See United States v. Thetford*, 935 F. Supp. 2d 1280, 1285 (N.D. Ala. 2013) ("[T]he United States Attorneys, as officers under the direction of the Attorney General, retain broad prosecutorial discretion, and the CVRA does not transfer any of that discretion to victims. . . . Not only do victims not have a veto, they do not have the right to dictate Government strategy or demand who to prosecute."); *Does v. United States*, 817 F. Supp. 2d 1337, 1343 (S.D. Fla. 2011) ("[T]o the extent that the victims' pre-charge CVRA rights impinge upon prosecutorial discretion, under the plain language of the statute those rights must yield."); *In re Petersen*, No. 2:10-CV-298 RM, 2010 WL 5108692, at *2 (N.D. Ind. Dec. 8, 2010) ("[T]he decision not to bring charges against the alleged perpetrators was a matter of prosecutorial discretion, not subject to review under the CVRA."); *Sieverding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93, 110 (D.D.C. 2010) ("The government's decision to allocate limited governmental resources to investigate a reported crime . . . is a discretionary function. . . . DOJ thus had no obligation to pursue Ms. Sieverding's allegations of criminal behavior, and she cannot state a claim for relief based on her allegations of a failure to subpoena or investigate." (quotation and citations omitted)), *aff'd*, No. 13-5060, 2013 WL 6801184 (D.C. Cir. Dec. 11, 2013).

Accordingly, even assuming that Nix is a crime victim, his demand to prosecute Juror No. 3 and deny immunity fails based on the clear language of § 3771(d)(6) and the cases cited above. The Court declines to interfere with what is clearly a matter of prosecutorial discretion. *See Thetford*, 935 F. Supp. 2d at 128 ("Government prosecutors simply may not be commandeered to do [a crime victim's] bidding.").[5]

## C. Stay Request

Although Nix has not filed any formal motion to stay, he has made a request in an affirmation filed on June 9, 2017, for a stay of this Court's proceedings so that he may petition the Second Circuit for a writ of mandamus, pursuant to 18 U.S.C. § 3771(d)(3). (Dkt. 340 at ¶ 13). The request is denied.

Section 3771(d)(3) provides, in relevant part, the following procedures regarding a petition for a writ of mandamus:

> If the district court denies the relief sought [under § 3771], the movant may petition the court of appeals for a writ of mandamus. . . . The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed, unless the litigants, with the approval of the court, have stipulated to a different time period for consideration. . . . In no event shall proceedings be stayed or subject to a continuance of more than five days for purposes of enforcing this chapter.

---

[5] As a final note concerning this request, the prosecution of Juror No. 3 that Nix seeks would put Nix in a difficult position with respect to his motion for a new trial, for which he bears the burden of proof. To obtain a new trial in a case where juror bias is alleged, a party must show: (1) that the juror answered a question during *voir dire* dishonestly, and (2) that the court would have granted a hypothetical challenge for cause based on a truthful answer. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). If Juror No. 3 is prosecuted for perjury, he could invoke his Fifth Amendment privilege against self-incrimination during the evidentiary hearing. In that event, it is difficult to envision how Nix would possibly meet his burden on the pending motion for a new trial.

18 U.S.C. § 3771(d)(3).

As an initial matter, the Court notes that the CVRA does not provide for an automatic stay of district court proceedings in the event that the district court denies relief under that statute. Accordingly, the Court considers Nix's request for a stay in light of the four traditional factors for a stay.

> Under that standard, a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Nken v. Holder*, 556 U.S. 418, 425-26 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors are the most critical. *Id.* at 434. "[T]he test contemplates that a movant may be granted relief even if it demonstrates something less than a likelihood of success on the merits of its appeal," but "the movant cannot prevail by showing a mere possibility of success or of harm." *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640, 641 (S.D.N.Y. 2012). The movant has the burden to show that a stay is warranted, and the determination whether to enter a stay pending an interlocutory appeal is within this Court's discretion. *See id.*; *see also Nken*, 556 U.S. at 433-34 ("A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." (quotations, citations and alterations omitted)).

Nix's request for a stay is unaccompanied by any argument with respect to the stay factors described above, and thus, he has utterly failed in meeting his burden to show that the circumstances warrant a stay of this Court's proceedings. Regardless, the Court finds that no stay is warranted. The first factor—likelihood of success on the merits—weighs against a stay of proceedings in this Court. As discussed above, Nix's request for relief under the CVRA is meritless for multiple reasons: he is not a victim, and the statute prohibits the interference with prosecutorial discretion that he seeks. Second, the Court finds that Nix would not suffer irreparable injury in the absence of a stay. To the contrary, the Court will proceed with an evidentiary hearing *requested by Defendants* regarding Juror No. 3's qualifications to serve on the jury, which arose out of Defendants' post-verdict motions for a new trial. (Dkt. 286; Dkt. 289). In other words, Defendants are seeking this hearing—and indeed, are requesting a thorough hearing, which will undoubtedly be more enlightening if Juror No. 3 is able to testify with a grant of immunity, as opposed to invoking his Fifth Amendment rights. Finally, any further delay in these post-verdict proceedings is unnecessary and against the public interest. Accordingly, Nix's request for a stay is denied.

## II.    Request to Appoint Special Prosecutor

Nix moves to appoint a special prosecutor in the investigation of Juror No. 3 (Dkt. 325 at ¶ 36), arguing that the prosecutors' role both in prosecuting Nix and in deciding whether to grant immunity to Juror No. 3 gives rise to an "impermissible conflict of interest," (*id.* at ¶ 35), that would prevent them from seeking justice and serving the public interest in seeing "that [Juror No. 3] is charged for sneaking on the jury to convict

Mr. Nix" (*id.* at ¶ 21). Because Nix's request lacks foundation in the law, the motion is denied.

Nix fails to cite any statute, federal case law, or other authority that would authorize this Court to appoint a special prosecutor in this case. Pursuant to 28 U.S.C. § 515(a):

> The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

28 U.S.C. § 515(a). As is clear from § 515(a), the decision whether to appoint a special prosecutor is a matter within the Attorney General's sole discretion. *See id.* Further, "[t]he doctrine of separation of powers precludes an individual from invoking the power of a court to compel the government to act on behalf of all members of society to vindicate the administration of justice." *Matter of Appointment of Indep. Counsel*, 766 F.2d 70, 76 (2d Cir. 1985). Courts routinely decline to grant the type of relief Nix requests. *United States v. Sessa*, No. 92-CR-351(ARR), 97-CV-2079(ARR), 2011 WL 256330, at *60 (E.D.N.Y. Jan. 25, 2011) (collecting cases), *aff'd*, 711 F.3d 316 (2d Cir. 2013); *see also Smith v. Scalia*, 44 F. Supp. 3d 28, 44 (D.D.C. 2014) ("By statute, Congress conferred the power to prosecute crimes on the United States Attorney General and his delegates, *see* 28 U.S.C. §§ 515-519, and under uncontroverted Supreme Court precedent, that power is exclusive."), *aff'd* No. 14-5180, 2015 U.S. App. LEXIS 12539 (D.C. Cir. Jan. 14, 2015); *United States v. Wrigley*, 520 F.2d 362, 369 (8th Cir. 1975)

("[T]he judiciary cannot, absent statutory or constitutional direction, determine the course of executive discretion. . . . The decision as to when special attorneys [a]re to be employed . . . [is] left solely to the discretion of the Attorney General.").

For example, in *Sessa*, the district court denied a motion to appoint a special prosecutor in the context of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, concluding: "As the determination whether to act pursuant to 28 U.S.C. § 515(a) is within the Attorney General's discretion, [the court] may not properly issue a writ of mandamus compelling him to do so." 2011 WL 256330, at *60.

A similar result is warranted here. Accordingly, Nix's request to appoint a special prosecutor is denied.

## III. Request to Recuse the Government from Nix's Prosecution

Nix further argues that "it is evident that the prosecution no longer seeks justice but only seeks the Defendants' conviction," (Dkt. 325 at ¶ 66), and as a result, he requests that the Government recuse itself from Nix's prosecution, (*id.* at ¶ 64). In setting forth this argument, Nix describes a variety of alleged actions by the Government (in connection with this case and others involving Nix) that, in his view, conspire to show that the Government should be disqualified from prosecuting him. (*See id.* at ¶¶ 39-66). Nix's claims are profoundly flawed, and indeed, all of these issues have been previously raised by Nix, and rejected.

As before with respect to his request for a special prosecutor, Nix identifies no legal authority that would support his position that the Government should be disqualified from this prosecution based upon the complaints he articulates. Further, it is unclear

whether Nix seeks to disqualify the entire office of the United States Attorney for the Western District of New York or just the two Assistant U.S. Attorneys ("AUSA") prosecuting this case. In either case, the motion is frivolous.

"With respect to the issue of disqualifying prosecutors, 'the Second Circuit has adopted a restrained approach to disqualification motions and has cautioned that where a threat of tainting the trial does not exist, the litigation should proceed, and the remedy for unethical conduct lies in the disciplinary machinery of the state and federal bar.'" *United States v. Eldridge*, No. 09-CR-329A, 2012 WL 289925, at *1 (W.D.N.Y. Jan. 31, 2012) (quoting *United States v. Cain*, No. 05-CR-360A, 2007 WL 1202305, at *3 (W.D.N.Y. Apr. 23, 2007)). In *Cain*, for example, defendants argued that disqualification of an AUSA was warranted "because the AUSA committed *Jencks* Act and *Brady* violations in an unrelated criminal proceeding against [one of the defendants]." 2007 WL 1202305, at *2. The district court rejected the argument, finding that there was "simply no basis to believe that a *Brady* violation in an unrelated criminal proceeding could somehow taint the criminal trial in this case." *Id.* at *3.

Nix's arguments in support of disqualification are wholly lacking in merit. The Court finds that there is no threat that the alleged improprieties of the Government cataloged above will taint this criminal proceeding because the alleged improprieties are either irrelevant (*e.g.*, the issues arising out of video surveillance in the pending criminal case against Nix docketed at 15-CR-6126) or conclusory (*e.g.*, the alleged interception of legal mail), or based on inaccuracies (*e.g.*, the Government did not violate the Text Order when a juror placed a phone call to one of the AUSAs in response to concerns that Nix's

investigator appeared at the juror's home for post-verdict interviews), or rehashed meritless legal arguments previously raised in these criminal proceedings (*e.g.*, Nix's arguments concerning *Brady/Jencks* Act materials and purported coaching of witnesses). Moreover, disqualification of the office of the United States Attorney for the Western District of New York or the two AUSAs prosecuting this case "would be needless disruption and delay of litigation, thereby impairing the efficient administration of justice." *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896 (2d Cir. 1982). Accordingly, Nix's motion to recuse the prosecution from his criminal case is denied.

## IV.    Discovery and Conflict Arguments

Nix also seeks production of any records relevant to an evidentiary hearing concerning Juror No. 3's qualifications to serve on the jury, set for June 12, 2017. (Dkt. 325 at ¶ 67). The Court ordered counsel for Defendants and the Government to disclose any publicly-obtainable information in their possession, custody, or control, concerning the criminal history or other background information of Juror No. 3, by June 8, 2017, at noon. (Dkt. 334). Since then, the Government has voluntarily disclosed a criminal history sheet for Juror No. 3 that, not being publicly available, was outside the scope of the Court's Text Order. Defense counsel also disclosed materials pursuant to that Text Order. In light of the Court's Text Order and the disclosures, the Court does not address further Nix's request for production of records.

Additionally, counsel for Nix states that he may have a conflict of interest because, in his view, "the Court has stated that the way the juror bias hearing will be conducted has been affected by Counsel's pursuit of the truth in relation the [sic] Mr.

Nix's illegal verdict through post-verdict interviews." (Dkt. 325 at ¶ 68). Counsel states that "[i]f Mr. Nix will receive less Process if current Counsel assists in conducting the hearing as opposed to another attorney conducting that same hearing, Counsel has a duty to raise the potential conflict and to notify the Defendant." (*Id.* at ¶ 69).

As referenced in the Court's Decision and Order denying the recusal motion filed by defendant Earl McCoy, counsel for Mr. Nix has engaged in a variety of activity that, at a minimum, has violated established precedent and the Court's rules. (*See* Dkt. 344 at 4-11). However, counsel has undertaken this conduct in an attempt to advance Nix's interests. In other words, this is not a situation where unethical conduct of defense counsel places him in a conflict position with his client. *Cf. Kohler v. Kelly*, 890 F. Supp. 207, 215 (W.D.N.Y. 1994) (citing *Winkler v. Keane*, 7 F.3d 304 (2d Cir. 1993) (where defense counsel unethically solicited payment from indigent defendant, there was a conflict of interest but representation was not adversely affected).

Moreover, Nix's underlying premise of an alleged conflict is fundamentally incorrect. First, Nix is not receiving less process because of the identity of his counsel, nor has the Court stated "that the way the juror bias hearing will be conducted has been affected by [Nix's counsel's] . . . pursuit of the truth. . . ." (Dkt. 325 at ¶ 68). Second, as the Court has made clear its Decision and Order on the recusal motion, the evidentiary hearing's procedures are being employed by this Court regardless of its concerns about Nix's counsel's conduct. (Dkt. 344 at 26).

Of course, a Court is independently obligated to investigate the facts whenever it "is sufficiently apprised of even the possibility of a conflict of interest." *United States v.*

*Levy*, 25 F.3d 146, 153 (2d Cir. 1994). However, this is not one of those situations—as set forth above, there is no genuine indication that there is even a possible conflict of interest, and thus no further inquiry is necessary.

## **CONCLUSION**

For the reasons set forth above, the Court denies Nix's motion (Dkt. 325) in its entirety, as well as his request for a stay.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: June 12, 2017
      Rochester, New York